UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JERRY WAYNE RICHARDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:13-CV-101 |
| | ) | (JORDAN/SHIRLEY) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 13, 14] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17, 18]. Plaintiff Jerry Wayne Richardson seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

The Plaintiff filed a Title II application for a period of disability and disability insurance benefits on April 23, 2009, and a Title XVI application for supplemental security income under the Social Security Act on April 20, 2009, alleging disability since December 1, 2006, due to headaches, seizures, a hernia, illiteracy, and neck, back, and left leg pain. His application was denied initially and upon reconsideration. The Plaintiff then requested a hearing, which was held before ALJ Todd Spangler, in Middlesboro, Kentucky, on October 6, 2011. The Plaintiff was

1

present and testified. Thereafter, the ALJ issued an unfavorable decision on November 29, 2011, finding the Plaintiff was not disabled. The Appeals Council denied the Plaintiff's request for review of that decision; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

## I.    ALJ FINDINGS

The ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

2.   The claimant has not engaged in substantial gainful activity since December 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.   The claimant has the following severe impairments:   lumbar degenerative disc disease, illiteracy, and a history of seizures (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity (RFC) to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) involving the avoidance of concentrated exposure to workplace hazards, no more than 1, 2, or 3 step instructions, and where the ability to read and write are not essential job elements.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born on July 3, 1964 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  (20 CFR 404.1563 and 416.963).

2

8.   The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 10-19].

## II.   DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.  See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

3

economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).  Plaintiff bears the burden of proof at the first four steps.  Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v.

5

Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).


IV.     POSITIONS OF THE PARTIES

The Plaintiff raises three allegations of error. First, the Plaintiff maintains that he meets or equals Listing 12.05B and C. [Doc. 14 at 7-9]. Second the Plaintiff argues that even if he does not meet or equal the listing, the ALJ's decision is not supported by substantial evidence because the vocational hypothetical did not include all of the Plaintiff's mental limitations. [Id. at 9-10]. Third, the Plaintiff contends that the ALJ failed to fully develop the administrative record. [Id. at 14-15].

The Commissioner asserts that substantial evidence supports the ALJ's finding that the Plaintiff's impairments do not meet or equal Listing 12.05B or C. [Doc. 18 at 4-6]. In addition, the Commissioner contends that the vocational hypothetical properly reflected the Plaintiff's

6

mental limitations. [Id. at 8]. Lastly, the Commissioner argues that the Plaintiff, not the ALJ, failed to obtain additional evidence after the hearing to further develop the record. [Id. at 6-7].

## V. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Listing 12.05

Generally, a claimant can establish disability by demonstrating all of the medical findings listed for an impairment. 20 C.F.R. § 404.1525(c)(3). "If a claimant does not have one of the findings, however, [he or] she can present evidence of some medical equivalent to that finding." Bailey v. Comm. Soc. Sec., 413 F. App'x 853, 854 (6th Cir. Mar. 11, 2011) (citing §§ 404.1525 & 404.1526). To demonstrate such a medical equivalent, the claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original). The claimant has the burden of establishing that his impairment meets or equals a listed impairment. Walters, 127 F.3d at 529.

In relevant part, Listing 12.05 provides the following:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>         . . . .
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR

7

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function[.]

20 C.F.R. § 404, Subpart P, App. 1 (12.05). Thus, to meet or equal Listing 12.05, a claimant's impairment must satisfy "the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria." Id. (12.00A) (emphasis added).

In the disability determination, the ALJ provided a detailed and lengthy discussion of Listing 12.05, finding that the Plaintiff "did not argue conformity with a particular physical listing nor did my independent review of the record reveal sufficient medical documentation to substantiate a physical impairment of listing level severity." [1] [Tr. 13]. The ALJ elaborated as follows:

> [T]here is no record of a valid verbal, performance, or full scale IQ at or below 59, or between 60 and 70, in accordance with the requirements of the listing criteria of 12.05(b) and 12.05(c), respectively. Administration of the Wechsler Adult Intelligence Scale during consultative examination by Charlton Stanley, Ph.D., in October 2009, yielded verbal (54), performance (65), and full scale (58) IQ scores that are statistically correlative with mild mental retardation (4F, p.4). However, mental retardation refers to significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22. *William R. Markles Appellant v. Joanne A. Barnhart, Commissioner of Social Secuirty*, 324 F.3d 182, para. 14 (2003). Yet at age 45, the claimant had progressed well beyond the developmental stage at the time of Dr. Stanley's assessment, and there is not comparative record of intelligence testing performed prior his 22nd birthday. Regardless, even with recognition of the claimant's credible, but uncorroborated, assertion of special education during high school, manifest evidence of sustained adult adaptive behaviors still contradict a state of mental retardation. From a social standpoint, his ability to engage, and sustain, the intimate emotional demands

---

[1] Although the ALJ addressed the criteria for paragraphs A-D of Listing 12.05, because the Plaintiff only challenges the ALJ's findings regarding paragraphs B and C, the Court will limit its review to the same.

8

of marriage; father children; help raise his 11-year old step-son; establish "good" eye contact and converse fluidly with the consultative examiner; and demonstrate initiative required to perpetuate self-employment from 2004 through 2009, contradicts the limited capacity suggest by mental retardation (6D, p. 2; 4F, p. 2). Likewise, the claimant's aptitude for performing household chores; mowing; cooking; shopping; hunting; fishing; watching the news on television; building things out of wood; bathing; dressing; grooming; shaving; and using the toilet, collectively define a cognitive faculty that expressly eclipses the restraints of mental retardation (3E, pp. 2-5; 4E, pp. 2, 6, 7; 4E, p. 3). Consequently, I find that the statistical results of IQ testing, and Dr. Charlton's related diagnosis of mild mental retardation, are inconsistent with the balance of evidence, and, thereby, wholly lacking in probity.

[Tr. 14].

The ALJ further recognized that the record was void of any mental health records. [Tr. 17]. As to opinion evidence, the ALJ assigned "significant weight" to state agency psychological analyst Rebecca Joslin, Ed.D., who completed a form entitled "Mental Residual Functional Capacity Assessment" ("Mental RFC Assessment") on January 5, 2010. [Tr. 278-80]. Therein, Dr. Joslin opined that the Plaintiff could understand and remember simple but not detailed instructions, is able to maintain attention, concentration, persistence, and pace for a two hour period, is able to interact appropriately with others, and is able to adapt to infrequent changes in the workplaces. [Tr. 280]. The ALJ found Dr. Joslin's opinion was consistent with the Plaintiff's recent, and previous, work history, as well as details of his independent life as a father and husband in addition to his competent range of social, daily, and cognitive activities." [Tr. 17]. The ALJ then assigned "marginal weight" to Dr. Stanley's consultative examination, finding that the diagnosis of mental retardation and a Global Functioning Assessment ("GAF") score of 45 was only based upon the Plaintiff's IQ testing. [Id.]. The ALJ explained that Dr. Stanley's opinion was "inconsistent with his own clinical observations and the claimant's

9

reported range of competent daily, social, and cognitive activities, as well as his history of sustained self-employment, welding, and semiskilled work as a farmer." [Id.]. The ALJ observed that Dr. Stanley opined that the Plaintiff's social relationships were only mildly impaired and his ability to maintain persistence and concentration throughout an entire workday and workweek appeared to be impaired as a result of the Plaintiff's physical problems, rather than intellectual difficulties. [Id.]. Finally, the ALJ assigned "considerable weight" to the lay opinions of the Plaintiff's wife and mother-in-law who each completed a Function Report which descried a "broad array of daily, social, and cognitive activities, like performing housework and a full range of personal care; mowing; cooking; hunting; fishing; and shopping, that are consistent with the lack of treatment and thereby, incongruous with total disablement." [Tr. 18].

The Court will now address the arguments raised by the Plaintiff in regard to each of the listing's requirements.

*(1) Subaverage Intellectual Functioning*

The Plaintiff relies on his school records, which were not before the ALJ but were submitted to the Appeals Council, as "clearly" showing that he suffered from an intellectual disability prior to age 22 because he was held back twice, was socially promoted on two occasions, and only completed the 9th grade. [Doc. 14 at 8, 11]. Fatal to the Plaintiff's argument, however, is that the Court may not consider the Plaintiff's school records in its "substantial evidence" review of the ALJ's decision.

The Sixth Circuit has "repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (citation omitted). However, "[t]he district court can [] remand the case for further administrative proceedings in

10

light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." Id. This is referred to as a "sentence six remand." Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988); see 42 U.S.C. § 405(g). In the instant case, the Plaintiff does not request a sentence six remand for consideration of his school records. Nonetheless, the Court will consider the evidence for the limited purpose of determining whether a sentence six remand is appropriate.

Evidence is considered new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Foster, 279 F.3d at 357 (quoting Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990)). "New evidence must indeed be new; it cannot be cumulative of evidence already in the record." Pickard v. Comm'r of Soc. Sec., 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) (quoting Elliott v. Apfel, 28 F. App'x 420, 424 (6th Cir. Jan. 22, 2002)). Evidence is material "only if there is a 'reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" Foster, 279 F.3d at 357 (quoting Sizemore, 865 F.2d at 711). In addition, "[e]vidence is material if it is probative of the claimant's condition during the time period at issue before the ALJ." Pickard, 224 F. Supp. 2d at 1171. Finally, good cause is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." Foster, 279 F.3d at 357. "The mere fact that the evidence at issue was not in existence at the time of the ALJ's decision does not establish good cause." Pickard, 224 F. Supp. 2d at 1171. Further, "this circuit has taken a harder line on the good cause test." Oliver v. Sec'y Health & Human Servs., 804 F.2d 964, 966 (6th Cir. 1986). The proponent of the new evidence bears the burden of proving all three elements. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 589 (6th Cir. 2005).

The Court finds that the Plaintiff's school records are not new, material, and good cause has not been shown. Although the school records do not contain duplicative information that was before the ALJ, they date back to August 1970 through December 1981, which clearly predates the hearing and disability determination. [Tr. 227-30]. Thus, the school records are not new for purposes of a sentence six remand. As to materiality, the Court has considered the Plaintiff's argument that he was held back and socially promoted twice and only completed the 9th grade. As an initial matter, the Court observes that our appellate court "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." Hayes v. Comm'r Soc. Sec, 357 F. App'x 672, 677 (6th Cir. Dec. 18, 2009). Moreover, troubling to the Court is that looking at the years the Plaintiff was held back and socially promoted, he missed between 30 and 40 days of the school year. [Tr. 227]. In addition, the Plaintiff testified he went "all the way through the eleventh" grade, not the 9th [Tr. 28, 260], and only quit then because he was expelled for fighting. [Tr. 33, 260]. Based on a review of the school records alone, which has almost an equal mixture of good, average, and failing grades and no indication of special education classes, the Court cannot say that there is a reasonable probability that the ALJ would have reached a different disposition had he had the benefit of reviewing the Plaintiff's school records. In fact, the ALJ specifically noted that even crediting the Plaintiff's testimony that he struggled in school, the ALJ found that the record contained sufficient evidence to contradict a state of mental retardation. [Tr. 14]. Finally, the Court finds that good cause has not been shown for failing to obtain this evidence earlier in the administrative proceedings. As discussed more fully below, the ALJ left the record open for an additional 30 days after the hearing so that Plaintiff's counsel could supplement the record with any further evidence that might substantiate the Plaintiff's

12

allegations. [Tr. 40]. Thus, not only did the Plaintiff have ample time prior to the hearing to submit his school records, he could have done so after the hearing as well and failed to do so with no explanation as to why the records could not have been produced earlier.

Accordingly, the Court finds that the Plaintiff has not shown a sentence six remand is warranted. Because the Court is precluded from considering the Plaintiff's school records, and the school records are the only evidence relied on by the Plaintiff in contending that he had subaverage general intellectual functioning with deficits in adaptive functioning prior to age 22, the Court finds that the Plaintiff cannot carry his burden at step three of the sequential evaluation. While it would be appropriate to end the analysis here, the Court will nonetheless address the Plaintiff's remaining arguments regarding the paragraph criteria.

*(2) "Paragraph B" and "Paragraph C" Criteria*

The Plaintiff argues he satisfies Listing 12.05B and C because he had several IQ scores that fell between the requisite ranges for both paragraphs' criteria. [Doc. 14 at 7]. The Plaintiff points to test scores achieved on the Wechsler Adult Intelligence Scale IV test ("WAIS-IV"), which was administered by Dr. Stanley on October 27, 2009. [Id.]. The Plaintiff argues that the ALJ improperly discounted the validity of the test scores by selectively focusing on certain evidence in the record. [Id. at 8].

On the WAIS-IV, the Plaintiff achieved the following scores: verbal comprehension (54), perceptual reasoning (73), working memory (63), processing speed (65), and full scale IQ (58). [Tr. 262]. Dr. Stanley opined that these score reflected an extremely low range of intellectual functioning. [Id.]. He further explained that while the Plaintiff is unable to deal with detailed, multi-step, or written instructions, he is capable of understanding extremely simple information and directions and does best with simple problems where respective operations are

13

involved. [Tr. 263]. In addition, the Plaintiff's ability to maintain persistence and concentration on tasks for a full workday and workweek appeared to be more impaired by his physical, rather than intellectual, problems. [Id.]. Dr. Stanley also found that the Plaintiff's social relationships were only mildly impaired. [Id.]. In sum, the Plaintiff was diagnosed with a learning disorder, not otherwise specified, mild mental retardation, and a GAF score of 45.[2] [Id.].

The Court finds that substantial evidence supports the ALJ's conclusion that the Plaintiff did not have a valid IQ that satisfied the "paragraph B" criteria. Although the Plaintiff's verbal and full scale IQ scores fall within the requisite range, "the mere fact of a qualifying IQ scores does not require that the ALJ find mental retardation under Section 12.05B when substantial evidence supports the contrary conclusion or the claimant's allegations of [his or] her capabilities are deemed not credible." Courter v. Comm'r of Soc. Sec., 479 F. App'x 713, 721 (6th Cir. May 7, 2012). Here, the ALJ properly consider the Plaintiff's daily, social, and cognitive activities, his work history, which included self-employment, the opinion of Dr. Joslin, and the lack of mental health records in assessing the validity of his IQ scores. For example, during the hearing, the ALJ questioned how the Plaintiff was able to work for 20 years and left the record open for an additional 30 days so that Plaintiff's counsel could "provide me with statements from the past employers because I'm interested, you know, in how he functioned that many years." [Tr. 40]. Again, no evidence was supplemented. In the disability determination, the ALJ noted the Plaintiff had entered into two marriages, raised two adult children and was currently raising an 11-year-old step-son, and was capable of attending to his own personal needs in addition to performing a host of other activities including household chores, mowing, cooking, grocery

---

[2] Dr. Stanley appeared to note some difficulty in accurately assessing the Plaintiff's GAF score due to the Plaintiff's learning disability and illiteracy. [Tr. 263]. Based upon the Plaintiff's overall performance on the IQ and literacy tests, Dr. Stanley opined that the Plaintiff's GAP was "about 45." [Id.].

shopping, hunting, fishing, and building things out of wood as noted in the Function Reports. [Tr. 14]. Furthermore, Dr. Stanley himself opined that the Plaintiff was only mildly impaired in his social relationships and that any difficulty in his ability to concentrate and persist appeared to be related to his physical impairments, a fact the ALJ found contradicted a valid IQ score. [Tr. 17]. Additionally, the ALJ cited to a lack of medical evidence documenting the existence or severity of the Plaintiff's alleged mental impairments. See Key v. Callahan, 109 F.3d 270, 274 (6th Cir. 1997) (holding that the failure to seek mental health treatment is significant when assessing the credibility of a plaintiff's allegations); Atterberry v. Sec'y of Health and Human Servs, 871 F.2d 567, 571 (6th Cir. 1989) (holding that the absence of psychiatric treatment suggests a mental impairment that is not severe or is not disabling). The Plaintiff would have the Court find that he has an intellectual disability based upon a single test while ignoring the array of evidence thoroughly discussed by the ALJ. This the Court will not do. See Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) (holding that a claimant must not only establish the existence of a medically-diagnose mental impairment, but also must prove its severity and functional impact).

Nor is the Court persuaded by the Plaintiff's argument that the ALJ "selectively" focused on activities cited in the Plaintiff's Function Reports while ignoring others. The Plaintiff points out that the Function Reports included other information such as that he is unable to "keep up with anything important like day to go somewhere." [Tr. 181]. While the regulations certainly charge the ALJ to consider all relevant evidence in the record, see 20 C.F.R. § 404.1520b, the requirement does not equate to a command that the ALJ comment on all the evidence. See Boseley v. Comm'r of Soc. Sec., 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the

15

evidence as a whole and reach a reasoned conclusion."). There is no doubt the ALJ reviewed the Function Reports and the Court has likewise examined the reports completed by the Plaintiff's wife and mother-in-law and finds that the ALJ did not err in his reliance on the reports, nor did he leave out important information that would mischaracterize the Plaintiff's functional limitations in light of all the evidence relied on and explicitly discussed by the ALJ.

As to the "paragraph C" criteria, the Court finds that the Plaintiff never had a valid verbal, performance, or full IQ score between 60 and 70 to begin with. The Plaintiff does not identify which score he relies on as "clearly" falling within the requisite range, and the Court has not found one. The Plaintiff has likely relied on the ALJ's statement that the Plaintiff's performance IQ was 65. [Tr. 14]. However, this score represents the Plaintiff's processing speed score on the WAIS-IV. [Tr. 262]. The Court must assume that the ALJ mistakenly transposed the processing speed and perceptual reasoning scores as the Court has found no authority for a processing speed score on the WAIS-IV to be the equivalent of a performance IQ score. Rather, the perceptual reasoning score, which in this case was 73, is the functional equivalent of a performance IQ score. See Plank v. Colvin, CIV. 12-4144, 2013 WL 6388486, at *7 (E.D. Pa. Dec. 6, 2013) (holding that a performance IQ score is the functional equivalent of the perceptional reasoning score on the WAIS-IV); Pierson v. Colvin, 960 F. Supp. 2d 933, 937 n.5 (S.D. Iowa 2013) (recognizing that "[t]here is a statement on page 5 of the WAIS–IV Administration and Scoring Manual that states: 'The terms [verbal comprehension index] and [perceptual reasoning index] should be substituted for the terms [verbal IQ] and [performance IQ] in clinical decision-making and other situations where [verbal IQ] and [performance IQ] were previously used") (citation omitted); Smith v. Astrue, No. 11-948-CJP, 2012 WL 2990064, at *3 (S.D. Ill. July 20, 2012) ("On this version of the Weschler Scale [WAIS-IV], the verbal

comprehension index is the functional equivalent of the verbal IQ on the earlier version, and the perceptual reasoning index is the functional equivalent of the performance IQ on earlier versions.").

Thus, the Court finds that the Plaintiff does not have a valid verbal, performance, or full scale IQ score between 60 and 70, and therefore the Court need not address whether the Plaintiff has also shown that he has "a physical or other mental impairment imposing an additional and significant work related limitation of function."


**B.      Development of the Administrative Record**

The Plaintiff next argues that the ALJ erred in failing to fully and fairly develop the administrative record in two respects. [Doc. 14 at 11]. First, the Plaintiff argues that the ALJ erred by not obtaining his school records, which the Plaintiff states is relevant to the issue of whether he meets or equals Listing 12.05. [Id.]. Second, the Plaintiff argues that the ALJ should have ordered a new IQ test if he doubted the validity of the test performed by Dr. Stanley. [Id.].

The Commissioner maintains that although the ALJ has a basic obligation to develop a full and fair record, he is not required to act as the Plaintiff's counsel or produce evidence on the Plaintiff's behalf. [Doc. 18 at 7]. The Commissioner points out that the ALJ left the record open for 30 days after the hearing, yet Plaintiff's counsel failed to submit the Plaintiff's school records. [Id.]. In addition, the Commissioner states that the ALJ was not required to obtain additional IQ testing because the record before the ALJ demonstrated that the Plaintiff did not have deficits in adaptive functioning prior to age 22. [Id.].

Although an ALJ has a duty to ensure a full and fair hearing, Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048, 1051 (6th Cir. 1983) (citing Richardson v. Perales, 402 U.S.

17

389 (1971)), it is well established that it is the plaintiff's burden to produce sufficient evidence to support a claim of disability. See Wilson, 280 F. App'x at 459 ("[T]his court repeatedly affirms that the claimant bears the ultimate burden of proving disability."); Landsaw v. Sec'y. of Health & Human Servs., 803 F.2d 211, 214 (6th Cir.1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.") (citing 20 C.F.R. §§ 416.912, 416.913(d)). Moreover, whether further evidence is necessary to develop the record is within the ALJ's discretion. Correll v. Astrue, No. 3:08-CV-280, 2009 WL 2601917, at *2 (E.D. Tenn. Aug. 24, 2009) (citing 20 C.F.R. 416.919a).

The Court finds that the ALJ fulfilled his duty in ensuring a full and fair hearing and developing the record before issuing his decision. First, the Court finds that the Plaintiff, not the ALJ, had the responsibility to obtain his school records. During the hearing, the Plaintiff testified that he completed the 11th grade, was in special education classes, and was held back and socially promoted several times. [Tr. 28, 33]. In addition, the Plaintiff stated that he had worked for 20 years despite his impairments, particularly that of dizziness, and that he had quit his last job as a construction framer because work was slow, not that he had a physical or mental impairment. [Tr. 28-29, 31-32, 34]. At the end of the hearing, the ALJ said he would keep the record open for an additional 30 days so that Plaintiff's counsel could supplement the record because "there is a lot of little areas that are just not – I don't have enough evidence to have where I need to go." [Tr. 40]. The ALJ particularly expressed a concern about how the Plaintiff has been able to function and work for the past 20 years in light of the limitations attested to and yet the record contained little evidence substantiating his allegations. [Id.]. The Plaintiff failed to submit any additional evidence to the ALJ and now attempts to excuse the failure by arguing it

18

was the ALJ's obligation to obtain the Plaintiff's school records.  To the contrary, it is the Plaintiff's duty, "rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."  Struthers v. Comm'r Soc. Sec., No. 98-1528, 1999 WL 357818, *2 (6th Cir. May 26, 1999).  The ALJ gave the Plaintiff, who was represented by counsel, the opportunity to add additional evidence that might help his case.  The Court finds that the ALJ was not obligated to do anything more.

Second, the Court is unpersuaded that the ALJ should have obtained additional IQ testing.  "[T]he regulations do not require an [administrative law judge] to refer a claimant to a consultative specialist, but simply grant him the authority to do so" if the existing evidence is insufficient to render a determination.  Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir.1990).  In other words, an ALJ is under no obligation to order a consultative examination "unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision."  Landsaw,803 F.2d at 214 (emphasis in original) (quotation omitted).  Here, given the Plaintiff's work history, social and concentration limitations, daily living activities, including the testimony from his wife and mother-in-law, the opinion of Dr. Joslin, and the lack on any medical evidence concerning the Plaintiff's alleged mental impairment, the Court finds substantial evidence supports the ALJ's conclusion that the Plaintiff's IQ scores were not consistent with his true level of functioning.  Therefore, the ALJ was not required to order additional IQ testing.  See Howell v. Sullivan, 950 F.2d 343, 349 (7th Cir. 1991) ("Given the lack of any medical evidence in the record to support Howell's complaints of depression and alcoholism, the ALJ was under no duty to order a consultative examination.").

Accordingly, the Plaintiff's allegation of error in this respect is not well-taken.

C.      **Vocational Hypothetical**

Finally, the Plaintiff argues that the vocational hypothetical presented during the hearing failed to provide substantial evidence that a significant number of jobs exist in the national economy that the Plaintiff is capable of performing. [Doc. 14 at 10]. Specifically, the Plaintiff maintains that the hypothetical should have included that he had moderate limitations in his ability to: (1) maintain attention and concentration; and (2) complete a normal work week without interruptions from psychologically based symptoms and perform at a consistence pace. [Id.]. These moderate limitations were noted under Section I of Dr. Joslin's Mental RFC Assessment. [Id.].

The Commission asserts that Section III of the Mental RFC Assessment is where the Plaintiff's actual mental RFC determination is recorded, and therefore, any findings made under Section I should not be included in a vocational hypothetical. [Doc. 18 at 8].

There are three sections to a Mental RFC Assessment form. Relevant to this case, however, are Sections I and III.[3] Section I is entitled "Summary Conclusions" and is used "for recording summary conclusions derived from the evidence in file." [Tr. 278]. Under Section I, the medical consultant evaluates the claimant's mental ability in four specific categories: (A) Understanding and Memory; (B) Sustained Concentration and Persistence; (C) Social Interaction; and (D) Adaption. [Tr. 278-79]. Under each category are a number of specific mental functions, 20 in total, which must be evaluated using one of the five following ratings: "not significantly limited," "moderately limited," "markedly limited," "no evidence of limitation in this category," and "not ratable on available evidence." [Id.]. Each function is evaluated

---

[3] Section II, entitled "Remarks," instructs the medical consultant to provide additional documentation that is needed to rate an impartment marked under Section I as "not ratable on available evidence." [Tr. 279]. No such rating was recorded under Section I, and therefore, Section II has been left blank and was not used to explain the Plaintiff's mental RFC. [Id.].

within the context of the claimant's "capacity to sustain that activity over a normal workday and workweek on an ongoing basis." [Tr. 278]. Once Section I is completed, the medical consultant is instructed to provide a "[d]etailed explanation of the degree of limitation for each category, as well as any other assessment information you deem appropriate," under Section III. [Id.]. Section III is entitled "Functional Capacity Assessment." [Tr. 366]. Under this section, the medical consultant is instructed to "[r]ecord the elaboration of the preceding capacities" by explaining "your summary conclusion in narrative form." [Id.].

Under the Sustained Concentration and Persistence category of Section I, Dr. Joslin opined that the Plaintiff was "markedly limited" in his ability to carry out detailed instruction, "moderately limited" in his ability to maintain attention and concentration for extended periods and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace, and "mildly limited" in his ability to carry out simple instructions, preform activities within a schedule and maintain regular attendance, sustain an ordinary routine without special supervision, work in coordination with others, and make simple work-related decisions. [Tr. 278-79]. Based upon these limitations, Dr. Joslin concluded under Section III's Functional Capacity Assessment that the Plaintiff was "unable to carry out detailed [instructions but was] [a]ble to maintain attention, concentration, and persistence and pace for a two hour period in spite of cognitive limits." [Tr. 280].

Contrary to the Plaintiff's assertion, the Court finds that the ALJ was not required to include any specific Section I findings in his vocational hypothetical. The Program Operations Manual System ("POMS"), as cited by the Commissioner, provides that Section I's Summary Conclusion is "**merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment.**"

21

Id. (citing POMS § DI 24510.060(B)(2)(a), http://policy.ssa.gov/poms.nsf/lnx/0424510060 (last visited April 24, 2014)) (emphasis in the original). POMS further explains that Section III's Functional Capacity Assessment "is for recording the mental RFC determination," and "[i]t is in this section that the **actual mental RFC assessment is recorded**, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." Id. (emphasis in the original). The Court notes that in this circuit, the POMS is "viewed as persuasive authority." Kirves v. Callahan, No. 96-5179, 1997 WL 210813, at *3 (6th Cir. Apr. 25, 1997).

In Wildman v. Astrue, No 2:10-CV-024, 2011 WL 111711, at *4 (E.D. Tenn. Jan. 13, 2011) (J. Jordan), the plaintiff in that case similarly argued that the ALJ erred by ignoring certain limitations that were marked as moderate under Section I. The District Court turned to the POMS for guidance and found that because Section III provides "the actual mental RFC assessment," the ALJ did not commit reversal error by adopting the Section III findings only. Id. Other sister courts have followed suit, holding that Section I findings do not constitute a claimant's RFC assessment. See Joiakim v. Comm'r of Soc. Sec., No. 10-11079, 2011 WL 1120043, at *6 (E.D. Mich. Mar. 8, 2011), adopted by No. 10-11079, 2011 WL 1134655, at *1 (E.D. Mich. Mar. 25, 2011); Velez v. Comm'r of Soc. Sec., No. 1:09CV0715, 2010 WL 1487599, at *6 (N.D. Ohio Mar. 26, 2010) adopted by No. 1:09CV715, 2010 WL 1487729, at *1 (N.D. Ohio Apr. 13, 2010); Liggett v. Astrue, No. 08-1913, 2009 WL 189934, at *8 (E.D. Pa. Jan. 27, 2009); Berry v. Astrue, No. 1:08CV00005, 2009 WL 50072, at *16 (W.D. Va. Jan. 7, 2009); Norris v. Astrue, No. 7:07-CV-184-FL, 2008 WL 4911794, at *16 (E.D.N.C. Nov. 14, 2008); Malueg v. Astrue, No. 06-C-676-S, 2007 WL 5480523, at *6-7 (W.D. Wis. May 30, 2007).

Because Section III of the Mental RFC Assessment contains the Plaintiff's actual RFC limitations as opined by Dr. Joslin, the Court finds that the ALJ did not err by failing to include the more specific moderate limitations notated under Section I of the assessment, and the Plaintiff does not cite any other reversible error regarding his assigned RFC. Accordingly, the Court finds the Plaintiff's argument unavailing.

VI.     CONCLUSION

Therefore, it is hereby **RECOMMENDED**[4] that Plaintiff's Motion for Judgment on the Pleadings [**Doc. 13**] be **DENIED** and the Commissioner's Motion for Summary Judgment [**Doc. 17**] be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).